

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| TOMMYE RUTH STALLINGS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:04-CV-219-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Tommye Ruth Stallings seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of Social Security in which the Government Pension Offset (GPO), 20 C.F.R. § 404.408a (2004), was applied to her application for wife's insurance benefits. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.

Stallings contends that the Commissioner erred in applying the GPO to her application for spousal retirement benefits and, in the alternative, contends that the Commissioner should be estopped from applying the GPO to her application.

**I.   Statement of the Case**

Stallings was employed as a school teacher for 30 years before retiring on May 31, 2002. (Tr. 22, 53.) Before her retirement, she investigated the possibility of filing an

application for spousal insurance benefits under 42 U.S.C. § 402. (Tr. 21, 24-26, 66-67.) Under § 402(a) and (b), retirement benefits may be payable to a husband or wife based on the Social Security earning records of his or her spouse. However, in cases in which an applicant also receives a pension from a governmental entity, any benefit to which such an applicant may be entitled is subject to the GPO under 42 U.S.C. § 402(k)(5)(A); 20 C.F.R. § 404.408a (2004). Specifically, benefits received on account of a spouse's Social Security earnings must be reduced by two-thirds the amount of the applicant's pension and up to zero dollars, if necessary, when (1) the applicant receives a pension from a federal, state, or local government agency and (2) the applicant was employed by the agency in work that was "not covered by Social Security on the last day of employment." 20 C.F.R. §§ 404.408a(a),(d). In many cases, the GPO completely diminishes any benefit an applicant would otherwise receive. *See* 20 C.F.R. § 404.408a(d).

In this case, the offset would apply to Stallings because at retirement she would receive a pension from the Teacher Retirement System of Texas (TRST) and because she was employed by Abernathy Independent School District (Abernathy ISD), a school district which did not cover its employees under Social Security. (Tr. 21, 53 .)

Stallings was aware of these facts and attempted to take advantage of a "loophole" utilized for years by Texas teachers to avoid the offset. (Tr. 16, 51-53.) At that time, the majority of Texas teachers were entitled to a pension under the TRST and were employed by districts that did not cover their full-time teachers under Social Security. Upon retirement,

2

many of these teachers avoided application of the GPO by working their last day of employment at a school district or in a different job within their own school district that was "covered by Social Security." Thousands of Texas teachers successfully utilized this loophole for years in order to avoid an offset in their spousal retirement benefits.[1] Crucial to this loophole and to this case, however, is that the school district must have entered into a Section 218 Agreement with the Commissioner of Social Security under which the parties agreed to extend Social Security coverage to individuals employed by the school district.[2] *See* 42 U.S.C. § 418.

Before her retirement, Stallings learned that teachers in the area in which she lived avoided the GPO and were receiving Social Security spousal retirement benefits because they worked at Borden County Independent School District (Borden County ISD) on their last day of employment. (Tr. 55.) Stallings sought advice regarding the legality of doing the

---

[1] Congress closed this loophole by amending 42 U.S.C. § 402(k)(5)(A) so that application of the GPO is avoided only when an applicant has worked his or her last sixty months, rather than last day, of employment for an entity that is covered by Social Security. Social Security Protection Act of 2004, Pub. L. No. 108-203 § 418, 118 Stat. 483, 531-32 (2004) (current version at 42 U.S.C. § 402(k) (2004)). Before this amendment, congressional auditors reported that the loophole could cost $450 million and that one-fourth of all Texas public education retirees (3,521 individuals) used the loophole in 2002. *Texas Educators Work One Final Day in Effort to Cash in Before Loophole Closes*, LUBBOCK AVALANCHE J., June 30, 2004.

[2] Underlying the requirement that a state agency enter a Section 218 Agreement is the general rule that individuals employed with State agencies are excluded from participating in the Social Security program. 42 U.S.C. § 410(a)(7). However, such individuals are not excluded from participation in Social Security and may benefit from the program when the state entity for which they are employed enter into a Section 218 Agreement to affirmatively include their employees in the Social Security program. 42 U.S.C. § 410(a)(7)(A). Thus, exclusion of state employees from the Social Security system is mandatory and the exception to the rule provided under §410(a)(7)(A) applies only when the state agency initiates an agreement with the Commissioner under Section 418. *See Sec'y of Health Educ. & Welfare v. Snell*, 416 F.2d 840, 843 (5th Cir. 1969) (citing 42 U.S.C. § 418).

same at a local Social Security Administration (SSA) office in Lubbock, Texas, and was told that she was eligible to avoid the offset and that she could work at Borden County ISD on her last day of employment. (Tr. 51, 54.) On this advice, Stallings worked her last day of employment on May 31, 2002, at Borden County ISD and was paid $75.00 in gross wages. (Tr. 22-23, 54.) The district deducted $5.74 in Social Security taxes and $4.99 for TRST contributions. (Tr. 23.) Thereafter, Stallings submitted documentation to the SSA office in Lubbock and was told that "everything was in order." (Tr. 51.) However, on July 22, 2002, she received a letter from the SSA informing her that the GPO would be applied to her application for benefits because Borden County ISD did not have a Section 218 Agreement with the Commissioner. (Tr. 51-52.)

Stallings objects to the application of the GPO to her case and argues that she complied with the provisions of 20 C.F.R. § 404.408a and with the advice provided to her by the representatives at the Lubbock SSA office. She contends that the requirement of a Section 218 Agreement is not mentioned in § 404.408a and that the Commissioner now seeks to amend the regulation by adding the requirement. She further contends that even if a Section 218 Agreement were part of the offset provision under § 404.408a, the requirement was observed in breach and that the Commissioner should be estopped from applying it in her case.

II. <u>Analysis</u>

Stallings' contention that the Section 218 Agreement is not mentioned in 20 C.F.R. § 404.408a is correct but irrelevant. Section 404.408a addresses the application of the GPO

rather than the measures a governmental entity must take to cover its employees in the Social Security program. *See id.* Governmental entities such as Borden County ISD must look to 42 U.S.C. § 418(a) and 20 C.F.R. §§ 404.1200(a), 404.1214(a) for the appropriate measures required to cover its employees under Social Security. Those provisions direct that a state agency such as Borden County ISD must initiate an agreement under Section 218 with the Commissioner in order to cover its employees under Social Security and in the absence of an agreement its employees are not covered under Social Security. 42 U.S.C. § 418(a); 20 C.F.R. §§ 404.1200(a), 404.1214(a); *see also Sec'y of Health Educ. & Welfare v. Snell*, 416 F.2d 840, 843 (5th Cir. 1969) (citing 42 U.S.C. § 418).

Although Stallings sought to avoid application of the offset under § 404.408a by working her last day of employment for an employer that she thought covered its employees under Social Security, Borden County ISD did not have a Section 218 Agreement with the Commissioner. (Tr. 16, 56-57.) Because her last day of work was not covered by Social Security, the GPO must be applied to reduce any spousal retirement benefits to which she may be entitled, 20 C.F.R. § 404.408a, and Stallings' contentions to the contrary must be rejected. Stallings' contentions that the Commissioner should be estopped from applying the GPO to her application must also be rejected.

The doctrine of equitable estoppel is rooted in equity and is judicially applied to avoid injustice. *Heckler v. Cmty. Health Servs., Inc.*, 467 U.S. 51, 59 (1984); 28 AM. JUR. 2D *Estoppel and Waiver* § 1 (2004). Although courts may apply estoppel, it is not favored in the law and should be applied rarely and only in extreme circumstances. 28 AM. JUR. 2D

*Estoppel and Waiver* § 3 (2004). Further, an individual asserting estoppel against the government bears a heavy burden. *Duthu v. Sullivan*, 886 F.2d 97, 99 (5th Cir. 1989), *cert. denied*, 496 U.S. 936 (1990) (citing *Heckler*, 467 U.S. at 60). Not only must such a plaintiff show the traditional elements of estoppel -- (1) that the defendant was aware of the facts, (2) that the defendant intended his act or omission to be acted upon, (3) that the plaintiff did not have knowledge of the facts, and (4) that the plaintiff reasonably relied on the conduct of the defendant to his substantial injury -- he or she must prove affirmative misconduct on the part of the Government. *See Linkous v. United States*, 142 F.3d 271, 278 (5th Cir. 1998) (citation omitted).

Stallings argues that school teachers worked their final day of employment with Borden County ISD and successfully avoided the GPO for years, that Borden County ISD was unaware of the need for a Section 218 Agreement with the Commissioner, and that the representatives at the SSA's Lubbock Office were unaware of the requirement and provided her with erroneous advice. She argues that she relied on the erroneous advice and contends that because the Commissioner is charged with carrying out Social Security programs, she cannot argue that she did not intend for applicants to rely on information provided by SSA representatives. Finally, she contends that the Commissioner's failure to educate her own employees regarding the requirement of a Section 218 Agreement and her failure to implement a system by which applicants might be informed of the requirement was affirmative conduct sufficient to trigger estoppel.

Although the court sympathizes with Stallings, equitable estoppel is not appropriate in her case. The application of estoppel against a government agency is particularly disfavored in cases in which disbursement of funds from the Treasury is at issue. *See, e.g., Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 434 (1990); *see also Schweiker v. Hansen*, 450 U.S. 785, 788 (1981). In fact, based on concerns related to the separation of powers, the United States Supreme Court has never applied equitable estoppel in a plaintiff's favor to require payment of funds from the Treasury. *See, e.g., Richmond*, 496 U.S. at 434. In this case, as in *Richmond*, the plaintiff requests estoppel for the purpose of requiring the Government to pay money not authorized by statute. *Id*. The court in *Richmond* refused to apply estoppel acknowledging that the Appropriations Clause in the Constitution provides that money may not be paid from the Treasury unless authorized by an act of Congress, *Id*. at 424 (citations and quotations omitted), and that granting requests such as Stallings' would "render the Appropriations Clause a nullity" in violation of the Constitution. *See id*. at 428. On this basis alone, estoppel should not issue from this court.

In addition, contrary to Stallings' contentions, the facts of her case do not demonstrate affirmative action on the part of the Commissioner sufficient to trigger estoppel. In *Hansen*, the United States Supreme Court rejected a plaintiff's argument that estoppel should apply because she detrimentally relied on erroneous advice from a representative who failed to follow SSA policy. 450 U.S. at, 786. The court emphasized "the duty of all courts to observe the conditions defined by Congress for charging the public treasury," and held that

courts are not authorized to overlook even procedural requirements that apply to the application of Social Security benefits. *Id.* at 788, 790-91.

The Fifth Circuit Court of Appeals has also rejected such claims. *See Jones v. Dept. of Health & Human Servs.*, 843 F.2d 851 (5th Cir. 1988); *Duthu,* 886 F.2d 97. In *Duthu*, the court considered a plaintiff's request for estoppel based on her claim that she relied on erroneous advice from SSA representatives. 886 F.2d 97. In that case, the plaintiff sought surviving child's benefits on behalf of her children in 1979 one month after their father and her husband disappeared and was presumed dead as a result of a plane crash. Upon her first inquiry, an employee of the SSA informed her that she could not file an application on behalf of her children until she obtained evidence of her husband's death and that without such evidence she would be required to wait seven years before she could file an application.

Despite this advice, the plaintiff inquired again a few months later with another SSA employee and was given the same advice. Her next inquiry was in October 1985 and she was again given the same advice. Shortly thereafter, one of the plaintiff's friends suggested that she contact an SSA administrator. The plaintiff did so and in November 1985, nearly six years after her husband disappeared, the SSA administrator informed the plaintiff that she could apply for benefits immediately and that she could have done so in January 1980 when she made her first inquiry. *Id.* at 98. The plaintiff filed an application for benefits in December 1985, and the SSA determined that her oldest child would not receive benefits because he no longer met the age requirement and that the youngest child was entitled to benefits only as of May 1985. *Id.*

The plaintiff sought equitable estoppel, claiming that the actions of the SSA employees constituted affirmative misconduct. The court rejected the plaintiff's claims. In so doing, the court emphasized that the plaintiff had never filed a written application and that although the SSA employees had erroneously advised her that it would be useless to file an application, they had not refused to allow her to do so. *Id.* at 100. The court held that refusing to allow the plaintiff to file an application might amount to affirmative misconduct sufficient to trigger estoppel but that in the absence of such, the "misinformation and ineptitude" of the SSA employees were blunders that would not estop the Government. *Id.*

Likewise, in this case the Commissioner's representatives did not refuse to allow Stallings to work her last day of employment at a school district that had entered a Section 218 Agreement with the Commissioner. Rather, they provided erroneous advice as to whether she could avoid the GPO. The United States Supreme Court has held that a governmental agency "cannot be expected to ensure that every bit of informal advice given by its agents . . . will be sufficiently reliable to justify expenditure of sums of money," *Heckler*, 467 U.S. at 64, and that "[T]he United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." *Richmond*, 496 U.S. at 420 (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 408-09 (1917)). Thus, the court has advised that "Men must turn square corners when they deal with the Government." *Heckler*, 467 U.S. at 63 (citing *Rock Island A.& L.R. Co. v. United States*, 254 U.S. 141, 143 (1920)). For these reasons, applying equitable estoppel would be inappropriate in Stallings' case.

### III. Standard of Review

In Social Security appeals the Commissioner's determination in regard to a claimant's application for benefits will be upheld if the Commissioner used proper legal standards to evaluate the evidence and the determination is supported by substantial evidence 42 U.S.C. § 405(g) (2004); *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993) (citations omitted). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision, and if the court finds that the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citations omitted). Because the Commissioner correctly applied the law to Stallings' application for benefits and used proper standards to evaluate the evidence, the application of the GPO to her case is supported by substantial evidence and must be affirmed.

### IV. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the decision of the Commissioner and dismiss Stallings' Complaint with prejudice.

### V. Right to Object

Pursuant to 29 U.S.C.§ 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall

bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _____April 27_____, 2005.

_____
NANCY M. KOENIG
United States Magistrate Judge